# **AMENDED COMPLAINT**

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**PLAINTIFFS:**                          **CASE NO. 1:22-CV-00330**

1) Ms. S. Hayes MQ5447 (Principal Plaintiff)
   SCI-Albion
   10745 Route 18
   Albion, PA 16475

2) Joel Marrero KX0054 (Co-Plaintiff)
   SCI Houtzdale
   209 Institution Dr.
   Houtzdale, PA 16698

DATE: December 12th 2022

**VS**

**DEFENDENTS:**

1) Morris Houser
   Facility Manager
   SCI-Benner

2) Lt. Kauffman
   Security Lt.
   SCI-Benner

3) Bradley Booher
   Deputy Sup.
   SCI-Benner

4) Jennifer Rossman
   PREA/PRC Staff
   SCI-Benner

5) CHCA Boland
   Health Care Admin.
   SCI-Benner

6) Doctor Kollman
   Site Med Dir.
   SCI-Benner

7) CHCA Ardery
   Health Care Admin.
   SCI-Benner

8) Doctor Dancha
   Regional Med Dir.
   Central Office

9) John/Jane Doe's
   DEPT Staff To Be
   Named

**All named defendants are being sued in BOTH their individual and official capasities

(1)

## Jurisdiction/Claims

We are bringing this case in federal court because we are suing Pennsylvania state correctional employees for:

**CAUSE OF ACTION ONE-** Deliberate indiffrence; Failure to properly treat a medical-mental health need...violations of the 8th and 14th amendments. *(This claim exclusive to Ms. Hayes)*

**CAUSE OF ACTION TWO-** Deliberate indiffrence; Failure to protect; Denial of due process...violations of the 6th, 8th and 14th amendments. *(This is a shared claim between Ms. S. Hayes and Mr. Joel Marrero)*

These claims are being brought under 42 U.S.C.S.§ 1983 and § 1331.

## Previous lawsuits dealing with the same facts

1) Plaintiff, Ms. S. Hayes, filed "Hayes v Gilmore 17-1327" in the Western District court. This was a deliberate indiffrence/failure to protect case. *(Facts are almost identical to the facts in cause of action two).* Case was dismissed...appealed...then remanded by the 3rd cir cour of appeals. Case was settled in December 2020 before Judge Ranjan.

2) Plaintiff, Ms. S. Hayes, filed "Hayes v Zaken 20-1136" in the Western District court. This was a medical/mental health deliberate indiffrence case for denial of proper medical/mental health treatment for gender dysphoria. Case was filed in October 2020 and settled in December 2020 before Judge Ranjan. *Facts are consistant with cause of action one)*

3) Plaintiff Joel Marrero has no previous civil actions.

## Qualifer

The plaintiffs in this civil action qualify as co-plaintiffs only in *Cause of action two,* because both Ms. Hayes and Mr. Marrero have suffered violations of their rights due to a shared trigger incident. Both plaintiffs were issued *"Identical"* language writ ups that enjoin the parties as co-plaintiffs in **Cause of action two.** Both write ups are written using fabricated facts and overwhelming evidence that proved the write ups to be false was ignored to find both parties guilty. This deliberate failure to verify the truth led to the resulting violations of the plaintiff's rights. **"But For"** the fabricated write ups none of the resulting violations would have of occured. The **"But For"** causation standard appies to both parties for cause of action two...see ibid. ; *University of Tex v Nasser. 570 U.S.@ 350.*

(2)

## CAUSE OF ACTION ONE

Ms. S. Hayes is a transfemale prisoner diagnosed with gender dysphoria. The initial diagnosis occured in 1979 at Mount Sinia Hospital in Hartford CT. The second diagnosis occured at SCI-Greene in March of 2018. After the second diagnosis Ms. Hayes was placed on hormone replacement therapy.

Ms. Hayes suffers from severe gender dysphoria from being forced to present as a male for over 40 years. The WPATH Standards of Care 7th Ed is the gold standard for trans health care and is universally accepted by the U S district courts in several precident setting cases. The WAPTH Standards make clear several key points relavant to this case. First...Treatment needs to be provided by trained specialist, trained in the Transgender medicine. Second...The triadic treatment consists of; Hormone replacement therapy; Real Llife expierence, (Gender Expression); and Sex reassignment surgery. Third...**ALL** three forms of treatment can safely be provided in a prison setting.

Ms. Hayes also suffers co-existing mental health issues directly related to her gender Dysphoria; Chronic anxiety; Severe depression; OCD; PTSD; Severe suicide ideation/self casteration. These conditions are greatly exasperated by her presenting as a male.

Pennsylvania prison policy 13.2.1, section 19 *Treatment for gender dysphoria* adopts the WPATH Standards and the American Psychological Association *Working with transgender and non conforming people* as guidelines for the policy.

Ms. Hayes contends that other than HRT, she has not recieved any further treatment for her gender dysphoria. She has requested treatment for male pattern baldness; face/body hair removal and real life expierence. She has been completely denied treatment for male pattern baldness and face/body hair removal. As for gender expression the prison system has allowed her to express her gender from 2019 through her transfer to SCI-Albion. Once at SCI-Albion, (a mental healh prison) she is now being froced to present as a male which is causing daily suicide ideation and thoughts of self casteration. This denial is due to select antisemetic staff and the issues are ignored by the administration, regardless of her verbal and written complaints.

## FACTS OF THE CLAIM

1) Ms. S. Hayes is a trans female prisoner serving life without parole in the state of Pennsylvania due to an interstate compact agreement with the state of Connecticut. She has no criminal obligations to the state of Pennsylvania.

2) In March 2018, the SCI-Greene medical department confirmed that Ms. Hayes suffered from severe gender dysphoria. she was also confirmed to have severe anxiety, depression, OCD, PTSD, cronic insomnia, and suicide ideation and several serious past suicide attempts. She was started on HRT meds in March of 2018.

3) From the date of the diagnosis through 1-6-21, Ms. Hayes resided at SCI-Greene. She was allowed to dress and present as a female in the following ways...Tailored uniforms...Feminized under clothing, colored pink/purple, bows on shirt...Bows in hair...Purse style tablet holder...Scarf worn around her waist...I/D wallet with plastic makeup mirror...Using art supplies as makeup/nail polish. ( *A Dept. of Corr photo is included with this complaint to support this statement)* She was denied treatment for male pattern baldness and face/body electrolysis. **Hayes v Zaken 20-1136** was settled in December 2020 exempting claims arising at Greene, But put the defendents on notice of G D issues.

4) On January 6th 2021, Ms. Hayes was transfered to SCI-Benner as a result of the settlement.

5) While at Benner, Ms. Hayes was allowed to continue to present as a female as identified in paragraph #3. Also she was allowed to were a ball cap to conceal her pattern baldness in most areas. Ms. Hayes was never challenged on her gender expression.

6) On 3-8-21 Ms. Hayes wrote PREA compliance manager Jennifer Rossman requesting to purchase eyeshadow and brow pencil to eliminate using art supplies as makeup. Ms. Hayes included photos of the requested items and a transgender item cash slip, (DC-138b), showing these were approved items. Ms. Rossman denied the request.

7) On 5-5-21 Ms. Hayes wrote a typed letter to facility manager Morris Houser regarding the denial by Ms. Rossman. In addition to the makeup items Ms. Hayes also included a request to purchase cup style bras because commissary did not have cup bras, only sports bras which are a **Binding** garment, not suitable for breast development. Ms. Hayes also included a copy of prison policy DC-ADM 815 section 2 § b-1, showing that this transaction was approved by policy. Mr. Houser denied the request, acknowledging the items were approved items and currently out of stock, but gave no reason for the denial.

8) On 5-19-21 Ms. Hayes sent regional superintendent Tabb Bickell a copy of the request package sent to Mr. Houser. On 8-9-21 Mr. Bickell's staff assistant, Wayne Innis, replied directing Ms. Hayes back to Ms. Rossman who already denied the request.

9) On 6-15-21 Ms. Hayes wrote a detailed grievence (#932509) on this issue making it clear it was treatment for gender dysphoria. On 7-16-21 Ms. Rossman officially denied the request. On 8-9-21 Mr. Houser oficially denied the request. On 9-10-21 D.Varner officially denied the request thereby exausting the grievence. **None** of these defendants have any training in transgender medicine.

10) On 2-18-21 Ms. Hayes wrote (at the time) facility manager Robert Marsh concerning several issues to include treatment for male pattern baldness and face/body hair removal. Because Mr. Marsh was a defendent in HAYES v ZAKEN he had Ms. Hayes called to security to answer the request. Mr. Marsh verbally, and in writing, told Ms. Hayes that CHCA Boland concidered these to be cosmetic proceedures and denied the request. On 2-23-21 Ms. Hayes wrote CHCA Boland a two page letter clearly explaining why these were not cosmetic and in fact treatment for gender dysphoria. Included was an ADA request and Policy 13.2.1 section 10 § E which showed the CHCA had the power to grant an electrict razor; Policy DC-ADM 807 section1 § 2-h and DC-ADM 815 attachment 2-E which showed wigs were a medically approved item. Also included was the DC-ADM glossary of terms which showed Ms. Hayes qualified for ADA approval under 42 U.S.C.§12102 (2). CHCA Boland refused to respond to the request package.

11) On 3-31-21 Ms. Hayes wrote grievence (#918898) as a result of Mr. Boland's refusal to respond to the informal request. On 3-25-21 Mr. Boland officially denied the request for male pattern baldness and face/body hair removal treatment. In his response he claimed Doctor Kollman and Doctor Dancha both concured the request was cosmetic annd not medically necessary. This was a blanket denial and none of these three defendants did an independent/in person evaluation prior to the denial. On 4-21-21 facility manager Morris houser denied the treatment. on 6-30-21 D.Varner denied the treatment exausting the grievence. **None** of these defendants have training in transgender medicine.

12) On 8-31-21 Ms. Hayes saw Doctor LeCleric for treatment for male pattern baldness and face/body hair removal.. He agreed that these were medically necessary proceedures for a trans female. During the examination Dr. LeCleric left to speak with CHCA Audrey. When he returned he told Ms. Hayes that she would recieve an answer in writing concerning theses issues. On 9-1-21 Ms. Hayes recieved the written response. In the response it stated "Per Regional Medical Director Doctor Dancha, Ms. Hayes was to use the facility barber to remove her face/body hair" meaning her breast and pubic areas. As a result Ms. Hayes wrote grievence (#944820). On 9-4-21 the grievence was rejected.

13) On 8-26-22 Ms. Hayes was transfered to SCI-Albion. For about three weeks Ms. Hayes was still allowed to present as a female in the way she dressed. She was seen by most of the upper administration during this time. Begining three weeks into her stay at Albion she began to have trouble with her gender

expression. Select antisemetic staff began a crusade to deny her gender expression. As of the date of this filing most of her gender expressing property has been taken as contraband, and the rest will be taken on sight. The items seized are items she posessed in two diffrent facilites and most are found on all her property inventory sheets. It was the PREA compliance manager (Ms. Keener) who said it was okay to confiscate the real life expierence items.

14) Ms. Hayes has written several PREA complaints on two issues. First she is housed on the bottom tier and must use the toilet, shave her body, and get dressed in full view (forced voyurism) of block inmates. The second issue is SGT Davis refuses to allow her into the yard. His reason is he does not want faggots in his yard. As of the date of this filing staff refused to accept all her PREA complaints. It was the unit manager (Mr. Santos) who declared these are not PREA issues.

15) As of the date of this filing Ms. Hayes is being forced to present as a male due to the blanket denial of her real life expierence (gender expression). This denial comes from staff who have no training in transgender medicine and is in contrast to the WPATH Standards of Care as well as prevailing medical opinion. This is also occuring in a mental health facility. **Once her grievences are exausted these Albion issues and defendents will be add to this complaint.**

16) To establish liability under the 8th amendment's prohibition against cruel and unusual punishment for denial of medical services to a prisoner. the prisoner must show; A) that her medical need is objectively serious...*it is unaimious with every U S apeals court gender dysphoria is a serious medical need.* 2) that officials acted with deliberate indiffrence to the prisoners health or safety...*Ms. Hayes contends that through her extensive and detailed grievences and written requests and via Hayes v Zaken 20-1136, The defendents were made aware of her gender dysphoria and that failure to treat caused a signifigant threat to her safety. Ms. Hayes has several very serious suicide attempts on record, contioues to express suicide ideation and desire to self casterate to psych staff.* This constitutes deliberate indiffrence under U.S.C.S. Const. Amend. 8; 42 U.S.C.A. § 1983 and that triable issues exist as to whether triadic threapy is appropiate.

### CAUSE OF ACTION TWO

Cause of action two is a shared claim between plaintiff Ms. S. Hayes and Joel Marrero. What binds these two prisoners, and gives rise for joinder in cause of action two, is the shared trigger event and the resulting "Identical Language" writeups given to both prisoners. The moment these two writeups were issued these two prisoners became bound in the litigation to challenge the validity of the writeups as well as the resulting damages both the plaintiffs have suffered soley due to these false writeups.

In this cause of action the plaintiffs rely on the "BUT FOR" causation standard

(6)

established in "*University of Tex...vs Nasser, 570 U.S. 338, 350 (2013)*. Each plaintiff **HAS** and will make **SEPERATELY** a "BUT FOR" claim that clearly arise from the shared trigger event on 4-21-22 which caused the writeups to be issued. Additionally the defendents refused to verify reliable evidence that would have proved the wrieups to be false for the sole reason to find the plaintiffs guilty and impose unjust punishment.

### Claim of Joel Marrero

1) On 4-21-22 at approximately 8:15am, an investigative cell search was preformed on the cell (F-B-214) of Mr. Marrero. The search lasted about an hour ant the officers left wit a plastic garbage bag that contained nuiscance contraband. No confisication slip was issued because nothing taken rose to the level of an item that would result in a writeup. Mr. Marrero was then allowed to use the shower and utilize the dayroom.

2) At approximately 12:30pm (3 1/2 hours after the cell search) Mr. Marrero was called to medical, then taken to security where he was informed that the drug K-2 was found in his cell and he was taken to the RHU and place on 802 status, Report # D692630. *This was in violation of policy because there was no chain of custody established due to no confisication slip issued.*

3) Once in the RHU he told staff he did not want a cell partner because he was in a very bad place metally due to being falsely accused. Mr. Marrero was place in a single cell and given a writeup for refusing a cell partner, Report # D442848.

4) On 4-22-22 Mr. Marrero was isssued a writeup for possesion of K-2 (D692631). The write up claimed a NARK test and K-9 comfirmed it was K-2. This was also in violation of policy because ALL drug charges must be confirmed by a LAB. This did not occur.
A confisication slip was finally issued 38 hours after the incident and back dated/timed in an atttempt to show legitimacy.

5) On 5-26-22 Mr. Marrero went to his diciplinary hearing and explained the preceeding violations and that he did in fact posess NO K-2. As a result the writeup was dismissed with out prejudice.

6) Instead of being released Mr. Marrero was again placed on 802 status. Then on 4-28-22 Mr. Marrero was given the "shared language" writeup #D692643. *(this is the same shared language writeup given to Ms. Hayes on 4-27-22)*. In this write up Lt Kauffman attempts to show that Mr. Marrero and Ms. Hayes were in a conspiracy with two other prisoners to introduce K-2 into the facility via legal mail. The link between the plaintiffs and the other two prisoners was a prison informant known as *"CHS 2022-Ben-001"*. Other than this prison informant there is nothing to show there is any conspiracy. There are phone calls where I/M Green and I/M Gunter appear to be talking about something that may be illegal, however they never mention the plaintiffs in any way. Also the legal mail identified in the writeup can be verified as comming from a real attorney and in every way contradicts the facts as written in the writeup.

7) Writeup # D692643 states the alledged contraband legal mail was mailed out on

(7)

4-6-22...mailed from Pittsburgh PA...and was mailed priority mail. Based on these facts this mailing would have arrived and been delivered no later than 4-10-22. The mailing that Lt Kauffman links to this conspiracy was mailed to **Ms. Hayes...arrived on 4-18-22...came by regular postage...and came from a reputable law firm in CT.** *It should also be noted that this law firm is a contract employee with the CT state prison system and reviews wekly security audits on every mailing sent to every CT prisoner to include Ms. Hayes so it is impossible for the writeup to be true. It should also be noted that no contraband was found in possesion of Ms. Hayes on 4-21-22 or any time there after.*

8) On 5-3-22 Mr Marrero went to his hearing. The same circumstances existed as they did in the dismissed writeup (D692631) No confiscation slip, No lab confirmation. Mr Marrero explained this as well as the facts in above paragraph #7.
He was found guilty by the total disregard for the truth and security staff refused to verify that the mail identified in the writeup was in fact real legal mail and could not possibly be the fake legal mail in the writeup. Subsequently Mr. Marrero was given 90 days D/C time.

9) On 5-4-22 Mr. Marrero appealed his finding of guilt. The appeal was rejected due to an oversite in putting the writeup # on the appeal. Ms. Rossman and Mr. Booher both refused to allow Mr. Marrero to add the writeup #.

10) On 6-2-22 Ms. Hayes was place in cell J-C-170 directly across from J-C-168 the cell of Mr. Marrero. This is when he learned that Ms. Hayes was issued the same "Identical Language" writeup and also give 90 days D/C time. Ms. Hayes made clear that The law firm could and would prove that they sent the mailing that arrived on 4-18-22 but all staff refused to verify that this mailing was in fact true legal mail.

11) On 7-19-22 Mr. Marrero was 802'd pending transfer.

12) Mr. Marrero did file a grievence on this incident, #979093, and his grievence was exausted on 7-11-22. Mr. Marrero also filed appeal his illegal 802 placement, D569984, facility manager Morris Houser upheld his illegal 802 placement on 8-1-22. As of the date of this complaint all grievences and appeals have been exausted. After lenghthy conversations with Ms. Hayes it was decided that the only way to find justice for falsifing documents, abuse of power, imposing unjust punishment and unjust RHU placement that continued through his 802 status was to bring this before a federal court.

**\*\*END OF CLAIM FOR MR. MARRERO\*\***

## Claim of Ms. Hayes

1) On 4-21-22 at approximately 8:15am an "Investigative Cell Search" was preformed on the cell (F-B-204) of Ms. Hayes. The search lasted an hour and the officers left the cell with a plastic bag of nuiscance contraband. No confisication slip oR writeup was issued as a result of the search. Ms. Hayes spent the remainder of block out making a phone call and speaking with her friend Mr. Marrero.

2) When block out was over Ms. Hayes and Mr. Marrero both returned to their cells. It was at approximately 1:30pm that Ms. Hayes learned that Mr. Marrero was called to medical and sent to the RHU just prior to count.

3) On 4-27-22 at approximately 10:20am staff came to cell F-B-204 and placed Ms. Hayes in handcuffs and escorted her to the RHU. This was done on camera and no justification was given for this action. (*Camers footage was secured and preserved*)

4) On 4-27-22 at approximately 12:00pm a writeup (D692640) was given to Ms. Hayes. The charges were Possision of K-2 and Conveying of K-2 into the prison via legal mail she recieved on 4-18-22.

5) The writeup came six days after the cell search and stated that a prison informant stated that Ms. Hayes and Mr. Marrero were working with two other prisoners to introduce K-2 into the prison. In the writeup it appears that the two prisoners (I/m Green and I/m Gunter) may be speaking about drugs on the phone but they **NEVER** mention Ms. Hayes or Mr. Marrero. The writeup states that the *"Disguised legal mail" ...was mailed 4-6-22...from Pittsburgh PA...and was mailed Priority mail.* The mail that Ms. Hayes recieved was in fact real legal mail that...*was mailed on 4-15-22...mailed from a law firm in Connecticut...and came regular postage.* There was a weekly control number on the mailing Ms.Hayes recieved and the mail was inspected by security on 4-18-22 prior to giving it to Ms. Hayes. The facts in the writeup **DO NOT** match the mailing Ms. Hayes recieved.

6) Because staff refused to speak with Ms. Hayes to verify these facts, Ms. Hayes declared a hunger strike on 4-27-22 **(No food/No liquids)**. She made this known to PSS Hall and in writing via her DC-141 part 2 (c) form.

7) Prison policy 13.2.1 section 8 § (H) "Hunger strike protocall" mandates that due to no liquids (@ h-2) monitoring SHALL begin. The PSS was mandated to contact the CHCA. The CHCA **(Ms. Ardery)** was mandated to ensure that nursing staff met with Ms. Hayes daily, take blood and urine samples and mandate psych consult among other mandates. None of this occured. Instead Ms. Hayes was left alone in her cell.

(9)

8) On 4-28-22 during first shift Ms. Hayes spoke directly to Facility Manager **Morris Houser, present was Deputy Bradly Booher.** She informed both that she was on a No food/No liquid hunger strike due to the false writeup. She also stated that she wanted to transfer to the New York prison system and wanted the facts of the writeup investigated. It was very clear that she was in distress by her comment *"I would rather die than be found guilty of something I did not do"*. Mr. Houser stated that if the mail was true legal mail the writeup would be dismissed. None of these top administrators followed policy 13.2.1 section 8-H. Ms. Hayes has a clearly established suicide pattern...Unjust trigger incident...Hunger strike...Serious suicide attempt and the defendents were aware of Ms. Hayes's suicide history.

9) Ms. Hayes continued to refuse meals from lunch on 4-27-22 through breakfast on 5-2-22. *(Block video has been secured and preserved to support thie facts stated on paragraph #8, #9)* By this point Ms. Hayes missed 15 meals and drank no fluids with no medical of mental health contact. She went to her hearing and presented her evidence and offered contact with her attorney to verify that her legal mail was not the mail in the writeup. The hearing examiner refused to verify the facts and found her guilty of contraband, *(when no contraband was found in her posession)* and conveying of contraband via legal mail, *(for legal mail that was in fact true legal mail)*. As a result she declared she was on a hunger strike to put it on record and was taken back to her cell.

10) On 5-2-22 at approximately 10:00am Ms. Hayes was seen by medical for the first time. No blood or urine was taken and the nursing staff preformed a 3 minute examination. Ms. Hayes was then taken back to her cell and left alone.

11) On 5-2-22 after missing her 17th meal Ms. Hayes found a razor blade on the floor of her RHU cell and used it to cut her right arm from wrist to elbow. She was removed from her cell and seen by a nurse. She was treated for a severe cut to her right forarm. The nurse can be heard on video stating..."Its not too bad...its already clotting." The nurse dressed the wound and Ms. Hayes was then taken to Mount Nittnay Hospital emergency room where she recieved 17 sutures for a wound 15cm long and 5cm deep. The reason the wound appeared to clot was due to dehydration and lack of blood flow to the capularies.

12) On 5-5-22, Ms. Hayes wrote a detailed grievence (#979279) pertaining to the triggger event, hunger strike and the suicide attempt. On 6-3-22 Deputy Bradley Booher met with Ms. Hayes to discuss the grievence. Mr. Booher refused to acknowledge the trigger event. and stated "hunger strikes due not justify placement on suicide observation". He denied the grievence but did agree to secure and preserve all the video requested as part of the relief.

13) The video request for the block cameras will show that Ms. Hayes missed 17 meals prior to her suicide attempt. The video will show that medical and psych staff did not do daily visits and in fact did not visit at all. The video will show two brief visits by the block psych and one tour by M. Houser and Mr. Booher, where Ms. Hayes did make clear that she was on a no food/no liquid hunger strike. **Per prison policy 13.2.1 section 8 § H NO LIQUIDS trigger attention within 24 hours and suicide prevention is a serious concideration.** In the case of Ms. Hayes it should have been mandatory and would have been if the defendents followed policy. The video will also show that staff lied in their grievence response by saying Ms. Hayes only missed 10 meals before medical intervention.

14) Both Mr. Houser and Mr. Booher falsified official documents to conceal the truth of what occured in this event. Mr. Booher did so in his grievence response dated 6-13-22 and M. Houser did so in his grievence response dated 7-8-22. They both stated in their responses "After careful investigation."

15) Ms. Hayes made a request for video preservation for block video on JC-unit from 6-1-22---6-7-22. This video will show a second person on a hunger strike who recieved proper treatment. Psych, medical and custody staff made daily visits to this prisoner. This is in direct contradiction to what the block video of Ms. Hayes's hunger strike will show. Due to the serious suicidal past of Ms. Hayes and the serious nature of the trigger event there is the real possibility that this rises above deliberate indiffrence and becomes criminal behavior due to the fact that a razor blade just happened to be in the RHU cell of a suicidal prisoner.

16) On 7-5-22 Ms. Hayes wrote Deputy Booher that her pending 802 placement and transfer was a breach of settlement. Per the settlement agreement Hayes v Gilmore 17-1327 and Hayes v Zaken 20-1136 placement at Benner was a concideration. Any subsequent transfer would be in good faith and legitimate penological reason. Ms. Hayes contended the false writeup violated this good faith clause. Mr. Booher denied any breach.

17) On 7-26-22 Ms. Hayes provided a written notice of breach to Ms. Rossman of the PRC committiee. Ms. Rossman denied any breach.

18) On 7-25-22 Ms. Hayes wrote an appeal to Mr. Houser on the 802 placement and transfer. She mentioned the prospective breach and violation of the good faith clause. Mr. Houser denied any breach.

(11)

19) Sometime in August Ms. Hayes spoke with attorney Defelice from the Dept of Corr legal affairs dept. During the first conversation she explained how the false writeup led to the hunger strike, then the suicide attempt, then the unjust RHU placement, then the unjust 802 placement and transfer. Ms. Hayes told attorney Defelice that the transfer was a breach of the settlement agreement and that she would like to discuss curing the breach and settling the issues without litigation. Attorney Defelice said he would look into the issues and set up another legal call for the following week. Attorney Defelice did contact Ms. Hayes again and a transfer to SCI-Albion was approved. Ms. Hayes chose Albion due to believeing that her gender dysphoria would be better addressed at a mental health facility. The remaining issues were to be addressed at a later date.

20) On 8-23-22 Ms. Hayes was transfered to SCI-Albion to cure the breach of settlement issue. The remaining issues were left unresolved.

## CONCLUSION

Pertaining to Cause of Action One---- Triable issues exist as to whether; **A)** The plaintiff's gender dysphoria constitutes a serious medical need; **B)** Triadic therapy is appropiate; **C)** The plaintiff should be allowed to present as a female as she has been allowed for four years; **D)** The plaintiff should be provided with face/body hair removal options and head hair replacement options; **E)** The defendents should modify present prison policy by removing gender expression from PREA policy and add it to 13.2.1 section 19 "Treatment for gender dysphoria" and approve the transgender item catalog submitted by Ms. Hayes.

Pertaining to Caues of Action Two---Triable issues exist to determine if the false writeup was the **BUT FOR** cause to the unjust RHU placement, unjust 802 placement, unjust transfer, and loss of parole for Mr. Marrero.

Pertaining to Cause of Action Two---Triable issues exist to determine if the false writeup was the **BUT FOR** cause to the unjust RHU placement, hunger strike, suicide attempt, unjust 802 placement and transfer for Ms. Hayes.

## REQUESTED RELIEF

### Cause of action one

1) Trial by magistrate.

2) Injunctive relief---Enjoin the defendents, their employees, agents and successors in office to provide medical care and treatment to Ms. Hayes that is consistant with the WPATH standards of care 7th edition to include adiquit face/body hair removal options; head hair replacement options, and real life expierence.

Establish an independent panal of medical experts trained in transgender medicine to regularly evaluate the delivery of medical care to Ms. Hayes and ensure compliance

(12)

with the requested relief, as well as approve the policy change proposal drafted by Ms. Hayes.
 Change prison policy definition of contraband from "Altered or not used for its intended purpose" to.."Altered or not used for its intended purpose to where it imposes a serious threat to the safety and security of the institution". The present definition is arbitrary and ambigious and allows staff too much descretion and allows staff to abuse their power to harrass prisoners as they see fit with no oversite.

3) Compensation and punitive damages for Ms, Hayes in the amount of $80,000.oo for the intentional deliberate indiffrence to the pain and suffering cause by the denial of treatment for the serious medical need gender dysphoria and the intentional antisemetic abuse inflicted by DOC staff.

### Cause of action two

1) Trial by magistrate.

2) Injunctive relief---Order the Dept of Justice to investigate the claims that arose in cause of action two as they pertain to the plaintiffs and to determine if there were other prisoners who suffered similar issues at SCI-Benner.
 Enjoin the defendants, their employees, agents and sucessors in office to change 802 prison policy so it can not be used to extend a prisoners RHU time of house them unjustly.
 Allow Ms. Hayes to file criminal charges against Lt Kauffman, Morris Houser, Bradly Booher for intentionall causing the suicide attempt of Ms. Hayes.

3) Compensation and punitive damages in the amount of...
    $50,000.oo for plaintiff Marrero.
    $150,000.oo for plaintiff Hayes.

### Respectfully submitted by

**Principal Plaintiff:**

*Ms. S. Hayes*
Ms. S. Hayes MQ5447
SCI-Albion
10745 Route 18
Albion, PA 16475

**Co-Plaintiff:**

*Joel Marrero*
Mr. Joel Marrero KX0054
SCI-Houtzdale
209 Institional Dr.
Houtzdale, PA 16698

(13)

Smart Communications/PADOC

SCI- ALBION

Name MS. S. HAYES

Number MQ5447

PO Box 33028

St Petersburg FL 33733

Legal
MAIL

Inmate Mail
PA Dept of
Corrections

CLERK OF THE COURT
U.S. DISTRICT COURT
235 N. WASHINGTON AVE
PO BOX 1148
SCRANTON PA 18501

RECEIVED
SCRANTON
DEC 16 2022
PER _____
DEPUTY CLERK

US POSTAGE PITNEY BOWES
$ 000.57
ZIP 16475
02 4W
0000376338 DEC. 12. 2022