## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MS. S. HAYES,

           Plaintiff,

     v.

MORRIS HOUSER, *et al.*,

           Defendants.

No. 4:22-CV-01939

(Chief Judge Brann)

## MEMORANDUM OPINION

### AUGUST 31, 2023

Plaintiff, Ms. S. Hayes[1], an inmate, formerly confined in the State

Correctional Institution, Albion, Pennsylvania,[2] filed the above captioned civil

rights action pursuant to 42 U.S.C. § 1983.[3]  She complains of actions which

occurred while she was confined at SCI-Benner.[4]  The action proceeds *via* an

amended complaint.[5]  The named Defendants are Dr. Dancha, Central Office

Regional Medical Director; and the following SCI-Benner employees:  Morris

Houser, Facility Manager; Lt. Kauffman, Security Lieutenant, Bradley Booher,

---

[1]    The Court will use feminine pronouns as Hayes identifies as a transgender female.

[2]    Plaintiff is currently confined in the Oregon State Penitentiary, Salem, Oregon.

[3]    Doc. 1.

[4]    *Id.*

[5]    Doc. 12.  Although Plaintiff's amended complaint continues to reference inmate, Joel Marrero, as a Plaintiff in the above captioned action, by Order dated March 6, 2023, this Plaintiff was dismissed from the above captioned action for failing to comply with this Court' Thirty (30) Day Administrative Order requiring Marrero to either remit the required filing fee to submit a fully executed application for leave to proceed *in forma pauperis*.  *See* Doc. 28.  As such, the Court will not consider any allegations in the amended complaint regarding Joel Marrero.

Deputy Superintendent; Jennifer Rossman, PREA/PRC Staff member; CHCA Boland and CHCA Ardery, Health Care Administrators; Dr. Kollman, Site Medical Director; and John and Jane Does, Dept. staff to be named.[6] Hayes alleges that Defendants acted with deliberate indifference in denying and or failing, to properly treat Plaintiff's medical and mental health needs.[7] Specifically, Plaintiff alleges that she "is a transfemale prisoner diagnosed with gender dysphoria" and "other than hormone replacement therapy ("HRT") she has not received any further treatment for her gender dysphoria."[8] For relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.[9]

---

[6] *Id*. As to the Jane and John Doe Defendants, Plaintiff claims that she was transferred to SCI-Albion for a three-week period during the time frame referenced in her complaint and that "once her grievances are exhausted these Albion issues and Defendants will be added to this complaint." Doc. 12 at 6. Suffice to say that Plaintiff has never amended her complaint to add any SCI-Albion issues or Defendants, nor would she be permitted to amend. Any occurrences and Defendants at SCI-Albion would be considered an impermissible joinder, in violation of Fed.R.Civ.P. Rule 20, as such occurrences and Defendants would not arise out of the same transaction or occurrence as Plaintiff's SCI-Benner claims and would not contain any common question of law or fact. *DaSilva v. Plishka*, 2022 WL 949988, *2 (M.D. Pa. March 29, 2022) (a plaintiff may join multiple defendants in a single complaint only if he asserts at least one claim linking all defendants); *Robinson v. Delbalso*, 2020 WL 5602932, *2 (M.D. Pa. September 18, 2020) ("the policy behind Rule 20 is not a license to join unrelated claims and defendants in a single lawsuit."); *Nicholas v. Heffner*, 228 F. App'x 139, 141 (3d Cir. 2007) ("[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits[.]"). Thus, Defendants, John and Jane Doe will be dismissed from the above captioned action.

[7] *Id*.

[8] *Id*.

[9] *Id*.

Presently before the Court are two separate motions to dismiss, filed on behalf of all Defendants.[10]  For the reasons set forth below, the Court will grant the Defendants' motions to dismiss.

## I.   STANDARD OF REVIEW

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[11]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[12]  In addition to considering the facts alleged on the face of the complaint, the court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[13]

However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[14]  "Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.' *Iqbal*, 556 U.S. at 675, 129

---

[10]  Docs. 22, 29.
[11]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[12]  *See Phillips v. Cty of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[13]  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).
[14]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

S.Ct. 1937.  Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  *Id*. at 679, 129 S.Ct. 1937.  *See also Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."  (citation and editorial marks omitted)).  Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'  *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937."[15]  Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[16]

Because Hayes proceeds *pro se*, her pleading is liberally construed and her complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[17]

---

[15]  *Connelly v. Lane Const. Corp*., 809 F.3d 780, 787 (3d Cir. 2016) (footnote omitted).
[16]  *Iqbal*, 556 U.S. at 681.
[17]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

## II.   HAYES' AMENDED COMPLAINT[18]

Hayes claims that in December 2020, *Hayes v. Zaken*, 20-1136 was settled, exempting claims arising at Greene" and "put[ting] Defendants on notice of GD[19] issues."[20]  On January 6, 2021, as a result of her settlement, Hayes was transferred to SCI-Benner.[21]  While at Benner, Hayes was allowed to continue to present as a female and "was allowed to wear a ball cap to conceal her pattern baldness in most areas" and was "never challenged on her gender expression."[22]

On March 8, 2021, Plaintiff "wrote PREA compliance manager Jennifer Rossman, requesting to purchase eyeshadow and brow pencil to eliminate using art supplies as makeup."[23]  Plaintiff claims that this request was denied.[24]

On March 31, 2021, Plaintiff filed Grievance No. 918898, alleging that Mr. Boland "officially denied the request for male pattern baldness and face/body hair

---

[18]   When ruling on a motion to dismiss, courts generally consider only the allegations contained in the complaint, the attached exhibits, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  However, the court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196; *see also, Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). Defendants submit as exhibits the grievances and appeals filed by Plaintiff and relied on by Plaintiff in her amended complaint.  As such, Defendants' exhibits will be considered without converting their motion dismiss into one for summary judgment.
[19]   Gender Dysphoria.
[20]   Doc. 12.
[21]   *Id.*
[22]   *Id.*
[23]   *Id.*
[24]   *Id.*

removal treatment."[25]   Boland stated "Doctor Kollman and Doctor Dancha both

concurred the request was cosmetic and not medically necessary."[26]   Plaintiff

believed this to be "a blanket denial and none of these three defendants did an

independent/in person evaluation prior to the denial.[27]   Plaintiff alleges that she

appealed Grievance No. 918898 to final review, where it was denied.[28]

On June 15, 2021, Plaintiff filed Grievance No. 932509, challenging the

"lack of adequate gender expression items offered in the commissary."[29]

Specifically, Plaintiff requested to be allowed to "purchase 2 packs of Best Form

cotton bras, 4 L.A. color eyeshadows and 3 L.A. color eyeliners from

Walkenhorst's."[30]

After a brief extension of time,[31] Plaintiff's Grievance No. 932509 was

denied as follows:

> In your grievance, you indicate that your complaint is due to the lack
> of adequate gender expression items offered in the Commissary.  You
> state that on 6/12/2020, you used the last of your eye shadow and
> black/brown eye pencil.  You also indicate that you do not have a bra
> in your size.  You state your belief that these items are approved on
> the Commissary list; however, are out of stock.  Therefore, you
> request that you be permitted to order 2 packs of BestForm cotton
> bras; 4 LA color eyeshadows; and 3 LA color eyeliners from
> Walkenhorst's.

---

[25] Doc. 12 at 5.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] Doc. 30-2 at 8.
[30] *Id.*
[31] Doc. 30-2 at 7.

First, it is noted that black mascara, black eye pencil, pink lipstick, and brown lipstick are all currently listed on the General Population Commissary Catalog. Therefore, you are not being denied gender affirming make up. Per DC ADM 815 Section 2, B, 23. "Only items listed in the Approved Outside Purchase Items List (Attachment 2-E) may be purchased." Your requested items of eyeshadow and black/brown eye pencil are not listed as items which can be purchased from an outside vendor.

In response to this grievance, I CCPM Rossman met with you on 07/01/2021 to inquire what size bras you are requesting. You indicated that you require a size 38B and would like to order such from an outside vendor, specifically Walkenhorst's. You were subsequently called to Clothing Exchange on 07/06/2021 and offered size 38 bras; however, you declined, indicating that you already have that style bra and are requesting a different style. If an item is out of stock, you would need to wait until it is in stock to order. DC-ADM 815 Section 2, B, 1, specifically states that "items available in the Commissary cannot be purchases as an Outside Purchase. Outside Purchase requests for other brands or styles of products that are offered for sale in the commissary will not be permitted." Lastly, Walkenhorst's is not an outside vendor that is approved in accordance with DC ADM 815.

Due to the reasons noted above, your grievance and requested relief are denied.[32]

Plaintiff appealed Grievance No. 932509 to the Secretary's Office of Inmate Grievances and Appeals for Final Review, where it was denied.[33]

On August 31, 2021, Plaintiff alleges that he met with Dr. LeCleric for male pattern baldness and face/body hair removal treatment.[34] He states that Dr. LeCleric "agreed that these were medically necessary procedures for a trans

---

[32]   Doc. 30-2 at 5.
[33]   Doc. 30-2 at 1.
[34]   Doc. 12 at 5.

female" and that Plaintiff "would receive an answer in writing concerning these issues."[35]  On September 1, 2021, Plaintiff received a written response stating the following:

> You were seen by Dr. LeCleric for transgender dysphoria on 8/31/21. Per policy we do not supply electric razors.  You will need to make arrangements with your unit mgr, counselor, etc., to work with the barber shop to accommodate a time for you to remove your unwanted body hair.
>
> This was the direction given to us by our regional medical director for central region.[36]

As a result of this response, Plaintiff filed Grievance No. 944820, which was rejected on September 4, 2021.[37]

On April 21, 2022, Plaintiff claims that an "'Investigative Cell Search' was performed on [her] cell," which "lasted an hour and the officers left the cell with a plastic bag of nuisance contraband."[38]

On April 27, 2022, she claims that "at approximately 10:20 am, staff came to cell F-B-204 and placed Ms. Hayes in handcuffs and escorted her to the RHU," with "no justification given for this action."[39]  At approximately 12:00 pm, Plaintiff received Misconduct No. D692640, charging her with "Possession of K-2

---

[35]  *Id.*
[36]  Doc. 49-6 at 9.
[37]  *Id.*
[38]  Doc. 12 at 9.
[39]  *Id.*

and Conveying K-2 into the prison via legal mail she received on 4-18-22."[40]

Plaintiff alleges that this misconduct "came six days after the cell search and stated that a prison information stated that Ms. Hayes and Mr. Marrero were working with two other prisoners to introduce K-2 into the prison."[41]  Specifically, the misconduct stated that "disguised legal mail…was mailed 4-6-22…from Pittsburgh PA…and was mailed Priority mail."[42]  Plaintiff, however, claims that the mail she received "was in fact real legal mail that was mailed on 4-15-22…mailed from a law firm in Connecticut…and came regular postage…there was a weekly control number on the mailing Ms. Hayes received and the mail was inspected by security on 4-18-22 prior to giving it to Ms. Hayes."[43]  She concludes that "the facts in the writeup do not match the mailing Ms. Hayes received."[44]  "Because staff refused to speak with Ms. Hayes to verify these facts, Ms. Hayes declared a hunger strike on 4-27-22 (no food/no liquids)" and "made this known to PSS Hall and in writing via her DC-141 part 2(c) form."[45]

On May 2, 2022, Ms. Hayes "went to her hearing and presented evidence and offered contact with her attorney to verify that her legal mail was not the mail in the writeup," and "the hearing examiner refused to verify the facts and found her

---

[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*

guilty of contraband and conveying of contraband via legal mail."[46]  Plaintiff states

that "as a result she declared she was on a hunger strike to put it on record and was

taken back to her cell."[47]  Later in the morning, "Ms. Hayes was seen by medical

for the first time. No blood or urine was taken and the nursing staff performed a 3

minute examination. Ms. Hayes was then taken back to her cell and left alone."[48]

Ms. Hayes "found a razor blade on the floor of her RHU cell and used it to cut her

right arm from wrist to elbow."[49]  She was removed from her cell, seen by a nurse,

and "treated for a severe cut to her right forearm."[50]  The nurse "dressed the wound

and Ms. Hayes was then taken to Mount Nittany Hospital emergency room where

she received 17 sutures for a wound 15cm long and 5cm deep.[51]

On May 5, 2022, "Ms. Hayes wrote a detailed grievance (#979279)

pertaining to the trigger event, hunger strike and the suicide attempt, which, on

June 3, 2022, was denied by Defendant Booher as follows:

> This is in response to grievance #979279.  In the grievance you allege
> that this grievance is on deliberate indifference/failure to protect a
> suicidal prisoner.   You state the issue spans a time period from
> 4.27.22 to 5.2.22 where all the events link to form a single issue.  You
> state that (at the time of the grievance) you were a suicidal prisoner
> with a documented history of suicidal behavior that follows a pattern;
> perceived injustice, hunger strike, suicide attempts.   You state that
> SCI Benner Township staff is aware of this pattern due to Hayes vs.

---

[46]  Doc. 12 at 10.
[47]  *Id.*
[48]  *Id.*
[49]  *Id.*
[50]  *Id.*
[51]  *Id.*

Gilmore lawsuit, this is the suicide attempt case that got you to SCI Benner Township and the following sequence of events; 4.27.22, you were placed in the RHU and issued a fabricated misconduct. Lt. Kauffman and a CHS stated that on 4.18.22, your legal mail was fake and contained a drug called K-2. You state that no drugs were found in your cell. The suspected package was mailed 4.6.22 via priority mail and it arrived twelve days later by way of regular mail which, does not fit the timeline. You state that most important, your legal mail came from a legit law firm. You stated that once in the RHU, you immediately stated you were on a no food/no liquid protest as soon as you read the misconduct. You told the psychology staff working the unit and later Superintendent Houser about your food/liquid protest. You state that block video will show that no tray came into your cell and staff did their job by noting the meals that were refused. You stated medical personnel never placed you on the hunger strike protocol. You stated on 4.28/4.29, Superintendent Houser told you if it was real legal mail the write up would be dismissed and you told him you could provide it was legit legal mail. You continued the no food/no liquids until 5.2.22. You state you attended your hearing and during the hearing you put on record you had missed fifteen meals and intended to continue the hunger strike. At that time, medical department staff began the hunger strike protocol. You made it clear that you would rather die than allow this injustice to stand and wanted out of the PA system. On May 2, 2022, at approximately 1600 hours, you found a razor in your cell and cut your arm 15cm long and 3-4 cm deep. You state that the only reason you didn't die was due to severe dehydration and quick RHU response. You stated, given your history you should have been in the POC on 4.28.22 and especially after informing Superintendent Houser. The requested remedy is you are provided with eight items, lettered A through G, for litigation, listed in this grievance.

I have reviewed this matter and here are my findings. On 6.3.22, CO4 Williamson and I spoke with you in the J Unit (SL5HU) regarding this grievance. I asked you if the basis of this grievance were that the facility did not keep you safe based on these factors: 1) The Hayes vs. Gilmore lawsuit, 2) failure to place you in a psychiatric observation cell due to your hunger strike and 3) your verbal interaction with Superintendent Houser. You agreed that was the basis of this along with the misconduct. I advised you that misconducts cannot be

grieved (Per the DC-Adm 804) and there are other avenues such as the misconduct appeal process.  I further stated that I would not be addressing the misconduct in this grievance.  I advised you that in regard to the Hayes vs. Gilmore lawsuit, that it would not have been an indicator to staff for placement into the POC.  I advised you that I had already spoken to Superintendent Houser and that he reported that you advised him that your purpose for a hunger strike was to initiate a transfer out of the Pennsylvania Department of Corrections and at no time did you state you were actively suicidal.  The medical department was notified of your Hunger strike on 5.2.22 after you refused your tenth meal.  Medial staff evaluated you and determined that you were medically stable and could remain in the RHU with daily evaluations.  Medical staff noted that you told them you were on a hunger strike as an avenue to be transferred out of the PA Department of Corrections.  It is also to be noted that upon reception into the SL5HU, Psychology Staff (PSS W. Hall) assessed you and you stated that you were not suicidal.  During our conversation on 6.3.22, you confirmed this to be accurate.  Psychology staff saw you again on 4.28.22 and 4.29.22 and you did not report any suicidal ideations.  Based on the information gathered during this grievance, there is no merit to support your allegations that staff did not take appropriate actions based on the above-mentioned reasons you previously stated.  Specifically, you did not display or verbalize suicidal ideations prior to the self-harm incident on 5.2.22.  This grievance is denied.  Your requested items for litigation will be preserved and maintained by the facility, however, (Letter: A) All reports to include the name of the CHS for this unjust trigger event will not be maintained for litigation due to the sensitive and confidential nature.  The grievance is denied.[52]

Plaintiff appealed Grievance No. 979279 to final review before the

Secretary's Office of Inmate Grievances and Appeals, who denied Plaintiff's

grievance on November 8, 2022, as follows:

A review of the record was conducted by the Bureau of Health Care Services, Psychology Office, regarding your concern of not receiving appropriate mental health treatment.  A review of the electronic

---

[52]  Doc. 30-1 at 11.

medical record establishes frequent contact with psychology staff prior to the incident listed in the grievance, and also shows that you were seen much more frequently than is directed in policy. On 4/27/202, you were seen by psychology at 10:05 a.m. for a routine contact in general population. During that contact, you were described as appropriate and engaging, denying any thoughts of suicide, and your feelings of depression and anxiety were addressed. Later than day, you received a misconduct and were escorted to the RHU. Upon arrival, you were seen by psychology and a Restrictive Housing and Special Management Housing – Mental Health Screening was completed which included completion of a suicide risk assessment and the creation of a safety plan through collaboration of yourself and psychology. During that contact, you denied any thoughts or plans of self-harm. Your issues with anxiety and depression were once again addressed and psycho-educational materials were offered. You were also educated on how to reach out to psychology for services. On 4/28/2022, you were once again seen by psychology and denied any thoughts of self-harm. You stated that you were on a hunger strike, and it was not an act of self-harm but a protest against what you perceived as an unfair misconduct which would get you "in front of a judge". You also made the statement, "I'm not suicidal or hurting myself, I'm allowed to fast". On 4/29/2022, psychology approached your cell, and you were offered out-of-cell contact which you refused. Questions were answered by you giving a "thumbs-up" sign and your participation was mostly nonverbal. On 5/2/2022, you were once again seen by psychology and once again reported that your hunger strike was a protest to "get out of this state" and reported that you were not eating until you spoke with your legal team. Later that evening, you completed an act of self-harm by cutting yourself with a razor blade. You were evaluated and placed in Psychiatric Observation for your safety. On 5/3/ 2022, you were seen out-of-cell by your mental health treatment team. Another suicide risk assessment and safety plan were completed, as well as a change of status treatment plan. During these contacts you continued to assert that your behaviors were a direct protect to you receiving an unwarranted misconduct and your desire to speak with your legal team. On 5/4 2022, you were discharged back to the RHU and evaluated by psychology. You were described as cooperative and denied any thoughts of self-harm. Later on this date, you were seen by the Psychiatric Review Team and your Individual Recovery Plan

was reviewed.  A review of the Electronic Medical Record establishes that services were appropriate, and all psychological issues were addressed comprehensively.  There is no evidence to support this grievance.  Therefore, your grievance and requested relief are denied.[53]

On December 6, 2022, Plaintiff initiated the instant action, in which she seeks compensatory and punitive damages, as well as injunctive relief, for "the intentional deliberate indifferent to the pain and suffering caused by the denial of treatment for the serious medical need gender dysphoria."[54]

## III.   DISCUSSION

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.[55]   The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....[56]

---

[53]   Doc. 30-1 at 1.

[54]   Doc. 12 at 13.

[55]   *See* 42 U.S.C. § 1983.

[56]   *Id., see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199,1204 (3d Cir. 1996).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law."[57]

## A.    Eighth Amendment Medical Claim

The Eighth Amendment prohibits prison officials from being deliberately indifferent to an inmate's serious medical needs by "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed."[58] "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm."[59] "In order to sustain this constitutional claim under 42 U.S.C. § 1983, a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.' "[60]

A guiding principle in the deliberate indifference inquiry is that, in general, "[d]eliberate indifference is a subjective state of mind that can, like any other form of scienter, be proven through circumstantial evidence and witness testimony."[61]

---

[57] *West v. Atkins*, 487 U.S. 42,48 (1988). *See also Barna v. City of Perth Amboy*, 42 F.3d 809,815 (3d Cir. 1994).

[58] *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

[59] *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009).

[60] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); citing *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002)).

[61] *Pearson*, 850 F.3d at 535 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (noting that, when "intent becomes critical," it is "important that the trier of fact hear" the defendant's "testimony in order to assess his credibility"); *Campbell v. Sikes*, 169 F.3d 1353, 1372 (11th Cir. 1999) ("[P]laintiffs necessarily must use circumstantial evidence to

In assessing the deliberate indifference prong of an Eighth Amendment

medical care claim,

> there is a critical distinction "between cases where the complaint
> alleges a complete denial of medical care and those alleging
> inadequate medical treatment." *United States ex rel. Walker v. Fayette
> Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979). Because "mere
> disagreement as to the proper medical treatment" does not "support a
> claim of an eighth amendment violation," *Monmouth Cty. Corr. Inst.
> v. Lanzaro*, 834 F.2d 326, 346 (3d. Cir. 1987), when medical care is
> provided, we presume that the treatment of a prisoner is proper absent
> evidence that it violates professional standards of care. *See Brown v.
> Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is
> well established that as long as a physician exercises professional
> judgment his behavior will not violate a prisoner's constitutional
> rights").[62]

The deliberate indifference inquiry in an adequacy of care claim involves

both a subjective and objective component because "evaluating whether medical

treatment is adequate presents an objective question."[63]  However, "the deliberate

indifference prong of a delay or denial of medical treatment claim involves only

one subjective inquiry—since there is no presumption that the defendant acted

properly, it lacks the objective, propriety of medical treatment, prong of an

adequacy of care claim."[64]  Therefore, all that is needed for a jury to find deliberate

indifference in a delay or denial of medical care claim "is for the surrounding

---

establish subjective mental intent."); *In re Kauffman*, 675 F.2d 127, 128 (7th Cir. 1981)
("Intent ... must be gleaned from inferences drawn from a course of conduct.")).

[62]  850 F.3d at 535.
[63]  *Pearson*, 850 F.3d at 535.
[64]  *Id*. at 537.

circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors."[65]

The Court finds that Plaintiff's gender dysphoria constitutes a serious medical need for purposes of an Eighth Amendment claims.[66]   However, Plaintiff fails to satisfy the subjective component of deliberate indifference.

Plaintiff indicates in her complaint that the "WPATH Standards of Care" make clear that treatment of gender dysphoria "triadic treatment consists of includes hormone replacement therapy, real life experience (Gender Expression) and sex reassignment surgery."[67]   She admits that she is receiving hormone replacement therapy and is able to present as a female.[68]   She takes issue, however, with certain institutional accommodations of her gender expression.

Initially, Plaintiff complains that the Commissary "did not have cup bras, only sports bras which are a binding garment" and not suitable for breast development."[69]   Additionally, she expresses her dissatisfaction with the selection of makeup the commissary offers and believes that she should be permitted to

---

[65]   *Id*. (citing *Durmer v. O'Carroll*, 991 F.2d 64, 68-69 (3d Cir. 1993); *United States v. Michener*, 152 F.2d 880, 885 (3d Cir. 1945)).

[66]   *See Doe v. Pa. DOC*, 2021 WL 1583556, at *22 (W.D. Pa. Feb. 19, 2021), adopted by 2021 WL 1115373 (March 3, 2021); *see also Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (holding that "[prisoner's] gender dysphoria is a sufficiently serious medical need to trigger the State's obligations under the Eighth Amendment.") (string citations omitted).

[67]   Doc. 12 at 3.

[68]   *Id*. at 4.

[69]   *Id*.

purchase both bras and makeup from an outside vendor.[70]  It is clear, however,

from the grievance documents referenced in Plaintiff's amended complaint,

Plaintiff was provided an opportunity to purchase a cup bra from the Commissary

but "declined, indicating that [she] already ha[s] that style bra and [is] requesting a

different style."[71]  Plaintiff was also informed that there was an array of "black

mascara, blacky eye pencil, pink lipstick and brown lipstick" available for

purchase from the Commissary.[72]  Thus, Plaintiff's own grievance documents

demonstrate that Plaintiff is not being denied gender expression necessities, but,

instead, is expressing a dissatisfaction with the style, color and/or bra cup selection

available from the Commissary.  While the Court can sympathize with one's

inability to satisfy personal preferences, Plaintiff's allegations in no way support

an Eighth Amendment claim of deliberate indifference.  As such, Plaintiff's claim

of denial of gender expression through the denial of makeup and bra purchases

from an outside vendor will be dismissed with prejudice.

Plaintiff's next claim is that is that she discussed male pattern baldness and

face/body hair removal with Dr. LeCleric, who is not a named Defendant in this

action, and that Dr. LeCleric "agreed that these were medically necessary

procedures for a trans female."[73]  When Plaintiff returned from her visit with Dr.

---

[70] *Id.*
[71] Doc. 30-2 at 5.
[72] *Id.*
[73] Doc. 12 at 5.

LeCleric, she was informed that, although prison policy prohibits the possession

electric razors, Plaintiff was permitted to make arrangements with her unit

manager or counselor to work with the barber shop to accommodate a time for her

to remove her unwanted body hair.  Once again, it is clear from the grievance

documents relied on in Plaintiff's amended complaint, that Plaintiff was not denied

gender expression in the form of hair removal but, after determining that

electrolysis was not medically necessary at this time, was provided a means of hair

removal that was permitted by prison regulation.  To the extent that Plaintiff

disagrees with not being permitted her choice of hair removal, such claim does not

support an Eighth Amendment claim of deliberate indifference to a serious medical

condition.[74]  As such, Defendants' motions to dismiss this claim will be granted

and the claim will be dismissed with prejudice.[75]

---

[74] "Mere disagreement as to the proper medical treatment [does not] support a claim of an [E]ighth [A]mendment violation." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

[75] The allegations against the DOC Defendants mainly concern their involvement in the grievance process addressing Plaintiff's claims of denial of gender affirming items. However, claims premised upon responses issued in the grievance process, to inmate requests or as part of the misconduct appeal process fail to establish personal involvement in the underlying alleged unconstitutional conduct. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); *Mincy v. Chmielsewski*, 508 Fed. Appx. 99 (3d Cir. 2013) (an officer's review of or failure to investigate an inmate's grievance generally does not satisfy the requisite personal involvement); *Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (allegations that prison officials responded inappropriately to an inmate's grievances do not establish the involvement of those officials in the underlying constitutional deprivation). As such, DOC Defendants, Houser, Rossman, Ardery, Boland and Booher, are to be dismissed from this action for Plaintiff's

**B.    Eighth Amendment Deliberate Indifference to Plaintiff's Attempted Suicide**

To state an Eighth Amendment claim based on deliberate indifference to the risk of suicide or self-harm, the plaintiff must allege facts supporting plausible inferences that (1) that the individual had a particular vulnerability to suicide, meaning that there was a "strong likelihood, rather than a mere possibility," that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.[76] The "particular vulnerability" standard does not entail a heightened pleading requirement or a showing that "the plaintiff's suicide was temporally imminent or somehow clinically inevitable."[77] However, the vulnerability "must be so obvious that a lay person would easily recognize the necessity for preventative action."[78] With presence of such risk, the second element requires the plaintiff to either show subjective knowledge of the vulnerability or that the official should have known that the detainee was

---

failure to establish their personal involvement with respect to Plaintiff's claims regarding denial of gender expression through baldness/hair removal treatment and gender affirming items.

[76] *Palakovic v. Wetzel*, 854 F.3d 209, 223–24 (3d Cir. 2017); *see also Colburn v. Upper Darby Twnshp.*, 838 F.2d 663 (3d Cir. 1988) (Colburn I), *Colburn v. Upper Darby Twnshp.* 946 F.2d 1017 (3d Cir. 1991) (Colburn II); and *Woloszyn v. County of Lawrence*, 396 F.3d 314 (3d Cir. 2005). *See also Easley v. Reuberg*, 2021 WL 3639734, at *4 (W.D. Pa. July 30, 2021), report and recommendation adopted, 2021 WL 3634813 (W.D. Pa. Aug. 17, 2021) (citation omitted).

[77] *Palakovic*, 854 F.3d at 230.

[78] *Id*. at 222. (quoting Colburn II, 946 F.2d at 1025).

particularly vulnerable.[79]  "Should have known," in this context, goes beyond knowledge with ordinary prudence, or negligence, but is less than subjective appreciation of the risk.[80]  Deliberate or reckless indifference is a willingness to ignore a foreseeable danger to the detainee's vulnerability, or conscience-shocking behavior in unhurried situations.[81]

Plaintiff's own grievance documents reveal that Plaintiff had frequent contact with the psychology staff prior to the incident, and while she communicated that she thought the misconduct was unfair, and that she wanted to get "in front of a judge,"[82] she never communicated an intent or plan to commit suicide or to commit self-harm.  On April 27, 2022, she was seen by psychology staff, and was "described as appropriate and engaging, denying any thoughts of suicide."[83]  Her feelings of depression and anxiety were addressed.[84]

Plaintiff was again seen by psychology staff on April 28, 2022 and denied any thoughts of self-harm.[85]  She stated, "I'm not suicidal or hurting myself, I'm

---

[79]  *Colburn II*, 946 F.2d at 1024-25.

[80]  *Colburn II*, 946 F.2d at 1025 (explaining that a defendant's failure to recognize large prominent scars on a decedent's wrists, elbows, and neck as indicative of suicidal tendencies amounted only to negligence precluding liability) (citing *Freedman v. City of Allentown*, 853 F.2d 1111, 1116 (3d Cir. 1988)).

[81]  *Kedra v. Schroeter*, 876 F.3d 424, 446 (3d Cir. 2017) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 910 (3d Cir. 1997); *Vargas v. City of Phila.*, 783 F.3d 962, 973 (3d Cir. 2015)).

[82]  Doc. 30-1 at 1.

[83]  *Id*.

[84]  *Id*.

[85]  *Id*.

allowed to fast" and that her hunger strike was not an act of self-harm but was a protest against what she perceived as an unfair misconduct.[86]

Psychology approached Plaintiff's cell on April 29, 2022 and offered her out-of-cell contact which she refused.[87] On May 2, 2022, Plaintiff was again seen by psychology and again reported that her hunger strike was a protest to "get out of this state" and that she would not eat until she was able to speak to her legal team.[88]

Initially, the Court notes that while Plaintiff's grievance documents reveal that Plaintiff was continually monitored by medical and psychology staff, there is no indication that any of the named Defendants were involved in any aspect of Plaintiff's treatment during her hunger strike, from April 27, 2022, through her suicide attempt on May 2, 2022.[89] Although Plaintiff alleges Defendants Houser, Booher and Ardery, were aware she was on a hunger strike, the amended complaint and Plaintiff's grievance documents are devoid of any facts to indicate they subjectively knew of and chose to disregard a substantial risk of serious harm to her health or safety.[90] Specifically, Plaintiff does not present any facts to substantiate a claim that the Defendants had any reason to believe she was not

---

[86] *Id*.

[87] *Id*.

[88] *Id*.

[89] To that end, the Court notes that Plaintiff's grievance documents reveal that she was medically assessed by PA Talasky and psychologically assessed by Psychology Staff PSS.W. Hall. Doc. 30-1 at 5, 12. Neither is a named Defendant in the instant action.

[90] *See Farmer*, 511 U.S. at 837.

receiving appropriate medical care relative to the hunger strike.  Moreover, there are no facts to support a claim that any Defendants knew of the existence of a razor in Hayes's cell or played any role in placing the razor there.  Therefore, Plaintiff has failed to plead an Eighth Amendment deliberate indifference claim as to her suicide attempt and Defendants are entitled to dismissal for lack of their personal involvement.[91]

### C.  False Misconduct

Plaintiff also alleges that Defendants filed a false misconduct, charging her with possession of and conveying K-2 into the prison via legal mail.[92]  The filing of a false misconduct report does not violate an inmate's due process rights.[93]  As stated in *Freeman v. Rideout*,[94] a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." However, the "Plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law."[95]  Consequently, where a prisoner is provided due

---

[91] *Rode*, 845 F.2d at 1207 (holding that individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct).

[92] Doc. 12 at 9.

[93] *See Seville v. Martinez*, 130 Fed.Appx. 549, 551 (3d Cir. 2005).

[94] 808 F.2d 949, 951 (2d Cir. 1986).

[95] *Id*.

process, no constitutional violation results from his being falsely accused of misconduct.[96]

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall ... deprive any person of life, liberty, or property, without due process of law...." The Supreme Court has mandated a two-part analysis of a procedural due process claim: first, "whether the asserted individual interests are encompassed within the ... protection of 'life, liberty or property[,]' " and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.' "[97]  If there is no protected liberty or property interest, it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred.

In *Sandin v. Conner*,[98] the Supreme Court shifted the focus of the liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner.[99]  The Court reasoned, *inter alia*, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence.[100]  Accordingly, the Court, focusing on the nature of the punishment instead of on the words of any

---

[96]  *Makenson v. Luzerne Cty. Corr. Facility*, Civ. No. 4-13-2204, 2014 WL 4187666, at *4 (Aug. 22, 2014); *Brown v. Hannah*, 850 F. Supp. 2d 471, 476 (M.D. Pa. 2012).

[97]  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).

[98]  515 U.S. 472 (1995).

[99]  *Id*. at 481.

[100]  *Id*. at 485.

regulation, held that the procedural protections in *Wolff v. McDonnell*,[101] were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."[102]  For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[103]

Here, Plaintiff's acknowledgment that she attended her misconduct hearing and had the opportunity to present evidence, belies any argument that procedural due process was not satisfied.  Further, Hayes' allegations that the Defendants Kauffman, Houser and Booher failed to properly investigate the misconduct, do not form the basis of a due process claim.[104]  Accordingly, Plaintiff's claim that her misconduct was falsely issued, and any challenge thereto, is dismissed with prejudice.

---

[101]  418 U.S. 539 (1974). In *Wolff*, the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. However, the Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative ...; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id.*

[102]  *Sandin*, 515 U.S. at 486.

[103]  *Id*. at 484.

[104]  *See McCullough v. Miller*, 330 Fed.Appx. 330, 333 (3d Cir. 2009) (finding no due process violation where inmate alleged the defendants had knowledge of the incident and "exercised acquiescence" by "approving false misconduct reports, affirming sanctions, or refusing to investigate the assault")

## IV.   LEAVE TO AMEND

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[105]  Hayes has already amended her complaint, and thus has had two opportunities to "tell [her] story."[106]  Further leave to amend will be denied as futile because Hayes has failed to cure numerous deficiencies even after "amendments previously allowed.[107]

## V.   CONCLUSION

Based on the foregoing, the Court will grant Defendants' motions to dismiss in their entirety.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[105]  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

[106]  *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019).

[107]  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones*, 944 F.3d at 483 (concluding that, where inmate plaintiff "has already had two chances to tell [her] story," providing "further leave to amend would be futile").