# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LINDA MAI LEE,

      Plaintiff,

    v.

MORRIS HOUSER, *et al.*,

      Defendants.

No. 4:22-CV-01939

(Chief Judge Brann)

## MEMORANDUM OPINION

### MAY 29, 2026

Plaintiff Linda Mai Lee[1] filed the instant *pro se* Section 1983[2] action in 2022, alleging that prison officials and medical providers at SCI Benner Township violated her constitutional rights.  Presently pending are Defendants' renewed motions to dismiss Lee's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court will grant in part and deny in part Defendants' motions.

## I.    BACKGROUND

During the pendency of this case, Lee has been transferred multiple times. When she initiated this lawsuit, she was incarcerated at SCI Albion and filed her

---

[1]   Prior to changing her name, Lee—a transgender woman—identified herself as "Ms. S. Hayes." *See* Doc. 2-1 at 1; Doc. 72.  That previous name appears throughout the record.

[2]   42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

Section 1983 complaint in the United States District Court for the Western District of Pennsylvania.[3]  However, because both the events underlying the lawsuit and the named defendants primarily concerned SCI Benner Township (which is located in the Middle District of Pennsylvania), the Western District transferred the case to this Court.[4]

From SCI Albion, Lee was transferred to Nevada Southern Detention Center,[5] and then to Oregon State Penitentiary,[6] where she remained for several years.  In January 2026, Lee notified the Court that she was being moved out of Oregon State Penitentiary and was currently in the custody of the U.S. Marshal Service but did not know her new facility of incarceration.[7]  Over four months have passed since that time, yet Lee has not informed the Court of her new facility of confinement or updated mailing address.

Shortly after the case was transferred to this Court by the Western District of Pennsylvania, Lee filed an amended complaint.[8]  That complaint remains the operative pleading in this action.  In her amended complaint, Lee sues eight identified defendants: Facility Manager Morris Houser, Lieutenant Kauffman, Deputy Superintendent Bradley Booher, PREA/PRC Staff Jennifer Rossman,

---

[3]    *See* Doc. 2-1 at 1.
[4]    *See* Docs. 4, 5.
[5]    *See* Doc. 37 at 1.
[6]    *See* Doc. 45 at 1.
[7]    *See* Doc. 109 at 1.
[8]    Doc. 12.

CHCA Boland, CHCA Ardery, Doctor Kollman, and Doctor Dancha.[9]  She also named "John/Jane Doe[]s" as defendants, but those unidentified actors were later dismissed from this litigation pursuant to Federal Rule of Civil Procedure 4(m).[10] Additionally, although a second prisoner-plaintiff—Joel Marrero—was named in the lawsuit,[11] Marrero was dismissed from this case for failure to comply with the Court's 30-day Administrative Order requiring either a motion to proceed *in forma pauperis* or the full filing fee.[12]  In her lawsuit, Lee seeks injunctive relief as well as compensatory and punitive damages.[13]

Defendants Dr. Kollman and Dr. Dancha (collectively "Medical Defendants"), as well as defendants Houser, Kauffman, Booher, Rossman, Boland, and Ardery (collectively "DOC Defendants") filed motions to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[14]  The Court granted those motions and dismissed the amended complaint with prejudice.[15] However, the United States Court of Appeals for the Third Circuit vacated that dismissal and remanded the case, finding that the Court had gone beyond the confines of acceptable material to consider at the Rule 12(b)(6) stage.[16]

---

[9]  *Id.* at 1.
[10]  *See* Docs. 99, 108.
[11]  *See* Doc. 2-1 at 1; Doc. 12 at 1.
[12]  *See* Doc. 28; *see also* Doc. 51 at 1 n.5.
[13]  *See* Doc. 12 at 12-13.
[14]  *See generally* Docs. 22, 29.
[15]  *See generally* Docs. 51, 52.
[16]  *See generally* Doc. 59-2.

Notably, the panel expressly stated, "[W]e decline to evaluate the sufficiency of [Lee's] pleading . . . before the District Court has occasion to do so. Instead, we vacate the District Court's judgment and remand this matter for further proceedings consistent with this opinion."[17]  The Court thus observed that "there remain unresolved sufficiency-of-the-pleading arguments that must be addressed before this case proceeds further," and gave Defendants the opportunity to renew their Rule 12(b)(6) motions in a manner that complies with the Third Circuit's nonprecedential opinion.[18]

Both the DOC Defendants and the Medical Defendants have renewed their motions to dismiss the amended complaint for failure to state a claim upon which relief may be granted.[19]  Those motions are fully briefed and ripe for disposition.

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[20]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[21]  In

---

[17]  *Id.* at 6.
[18]  *See* Doc. 99 & n.2.
[19]  *See generally* Docs. 101, 105, respectively.
[20]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[21]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[22]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[23]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[24]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[25]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[26] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[27]

Because Lee proceeds *pro se*, her pleadings are to be liberally construed and her amended complaint, "however inartfully pleaded, must be held to less stringent

---

[22] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[23] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[24] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[25] *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[26] *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[27] *Iqbal*, 556 U.S. at 681.

standards than formal pleadings drafted by lawyers[.]"[28]  This is particularly true when the *pro se* litigant, like Lee, is incarcerated.[29]

## III.   DISCUSSION

Lee alleges that she was diagnosed with gender dysphoria in 2018 at a different state prison and prescribed hormone replacement therapy (HRT).[30]  In January 2021, she was transferred to SCI Benner Township, where she claims that prison officials and medical providers violated her constitutional rights.

In her amended complaint, Lee asserts "cause of action one" and "cause of action two,"[31] appearing to focus on two unrelated series of events at SCI Benner Township.  In the first "cause of action," Lee maintains that from approximately March to September 2021, multiple Defendants acted with deliberate indifference to her serious medical need of gender dysphoria.[32]  In the second "cause of action," Lee alleges that she was issued a false misconduct in April 2022 and wrongfully placed in administrative detention, which led her to engage in a hunger strike and then cut her right arm "from wrist to elbow" in an attempted suicide.[33]

During the first round of Rule 12(b)(6) motion practice, the Court liberally interpreted the amended complaint as asserting, in cause of action one, several

---

[28]   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[29]   *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[30]   Doc. 12 at 4.
[31]   *See id.* at 2.
[32]   *See id.* at 3-6.
[33]   *See id.* at 9-12.

Eighth Amendment claims of deliberate indifference to serious medical needs.[34]

And in cause of action two, the Court determined that Lee was attempting to raise an Eighth Amendment claim of deliberate indifference to the risk of suicide and a Fourteenth Amendment procedural due process claim.[35]  None of the parties have challenged this initial framing,[36] and each party's renewed brief seems to largely be a carbon copy of the initial round of Rule 12(b)(6) briefing that occurred in 2023.  The Court will therefore assess the sufficiency of the amended complaint with an eye toward its original framing of the claims asserted.

### A.    Eighth Amendment Medical Indifference

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has

---

[34]   *See* Doc. 51 at 15-19.

[35]   *See id.* at 20-25.

[36]   Lee contends that in one paragraph of the amended complaint, she alleged a claim under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq*.  *See* Doc. 107 at 2 (citing Doc. 12 at 5 ¶ 10).  But even construing the *pro se* amended complaint liberally, it cannot be said that Lee's single paragraph recounting that she had mentioned the ADA in her prison grievances is sufficient to put Defendants on notice that she is attempting to raise an ADA claim in her federal lawsuit.  This is particularly true when the ADA is not mentioned anywhere else in the amended complaint, especially the "Jurisdiction/Claims" section where Lee outlines the federal claims purportedly asserted in each "cause of action."  *See* Doc. 12 at 2.  Nor has Lee discussed the elements of an ADA claim in her pleading.  Moreover, she has not identified whom this claim is asserted against, although it appears to target CHCA Boland.  *See id.* at 5 ¶ 10.  To the extent that Lee seeks to assert an individual liability claim under the ADA against Boland (or any other Defendant), that claim would fail, as there is no individual liability under the ADA.  *See Montanez v. Price*, 154 F.4th 127, 145 (3d Cir. 2025); *see also Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 299 & n.27 (3d Cir. 2017) (holding that Title VII and ADA claims cannot be brought through a "back door to the federal courthouse" via 42 U.S.C. § 1983, and noting that Title VII and ADA claims are intended to impose liability on employers, not individuals); *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 289 (3d Cir. 2006) (noting in dicta that "neither the ADA nor 12 U.S.C. § 1831j permit individual damages liability on the part of employees").

incarcerated."[37]  To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."[38]  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[39]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[40]  Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[41]  Claims sounding in mere medical negligence will not suffice.[42]

Lee's amended complaint contains several instances where she believes the Medical or DOC Defendants acted with deliberate indifference to her gender

---

[37]  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).
[38]  *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).
[39]  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).
[40]  *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
[41]  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[42]  *Rouse*, 182 F.3d at 197.

dysphoria.  First, she alleges that on March 8, 2021, she wrote to PREA/PRC Staff Rossman and asked to purchase several makeup products, but Rossman denied the request.[43]  Two months later, Lee wrote a letter to Facility Manager Houser regarding Rossman's denial and included a request to purchase "cup style bras" rather than sports bras, as sports bras are a "binding garment" that is not suitable for breast development.[44]  Lee alleges that Houser responded, acknowledging that the items were approved under prison policy but currently out of stock and denying the request.[45]  Lee further asserts that on June 15, 2021, she filed a formal grievance (#932509) about these issues, but that grievance was denied at all levels.[46]

In her second medical indifference claim, Lee alleges that in February 2021, CHCA Boland denied her requests for treatment for male pattern baldness and "face/body hair removal,"[47] reasoning that these treatments were "cosmetic procedures."[48]  Lee claims that she followed up with a detailed letter to Boland explaining why the requested treatments were not "cosmetic" but in fact treatment for gender dysphoria, but received no response.[49]  Lee once again filed a formal

---

[43]  Doc. 12 at 4 ¶ 6.
[44]  *Id.* at 4 ¶ 7.
[45]  *Id.*
[46]  *Id.* at 5 ¶ 9.
[47]  Lee does not allege in her amended complaint what specific treatments she requested to treat male pattern baldness or for facial and body hair removal.
[48]  Doc. 12 at 5 ¶ 10.
[49]  *Id.*

grievance (#918898), which was likewise denied at all levels.[50]  Notably, Lee asserts that in CHCA Boland's initial grievance response, Boland explained that Dr. Kollman and Dr. Dancha "both concured [sic] that the request was cosmetic" and "not medically necessary."[51]

Lee further avers that on August 31, 2021, she saw Dr. LeCleric (who is not a defendant in this case), and Dr. LeCleric allegedly agreed that the requested treatments for male pattern baldness and hair removal were medically necessary for a transgender female.[52]  According to Lee, Dr. LeCleric spoke privately with CHCA Audrey during the August 31 examination and then informed Lee that she would receive a formal written answer concerning these issues.[53]  On September 1, 2021, Lee received that response, which stated that Dr. Dancha had determined that Lee "was to use the facility barber to remove her face/body hair," which would include her breast and pubic areas.[54]  Lee promptly wrote another grievance (#944820), which she asserts was rejected several days later.[55]

To summarize, Lee raises two claims of deliberate indifference to serious medical needs.  In her first claim, she alleges that PREA/PRC Staff Rossman and

---

[50]  *Id.* at 5 ¶ 11.
[51]  *Id.*
[52]  *Id.* at 5 ¶ 12.
[53]  *Id.*
[54]  *Id.*
[55]  *Id.*  Lee's amended complaint contains additional allegations about subsequent events at SCI Albion.  *See id.* at 5-6 ¶¶ 13-15.  These events, and any claims implicated, are not part of this litigation.

Facility Manager Houser improperly denied her requests for cup bras and gender affirming makeup items.  In her second claim, she alleges that CHCA Boland, CHCA Audrey, Facility Manager Houser, Dr. Dancha, and Dr. Kollman improperly denied her requests for certain unspecified treatments for male pattern baldness and facial and body hair removal.

Defendants do not contest that Lee's diagnosed gender dysphoria is a serious medical need.  Rather, they maintain that she has failed to allege the requisite personal involvement or deliberate indifference.

Lee's first claim plausibly alleges deliberate indifference to serious medical needs by PREA/PRC Staff Rossman and Facility Manager Houser.  Lee avers that she requested gender affirming makeup and medically necessary bras for her diagnosed gender dysphoria, and those requests were denied by Rossman and Houser without an adequate reason.  Lee further alleges facts indicating that these Defendants were aware of her gender dysphoria diagnosis.[56]  Although the grievance records reflect a much more factually complicated situation,[57] those

---

[56]  *See* Doc. 12 at 4 ¶¶ 3-7.

[57]  *See generally* Doc. 30-2.  Lee's initial grievance indicates that she was grieving "the lack of ad[equate] gender expression items offered in the commissary" and the fact that her requests to purchase certain out-of-stock items from an outside vendor were denied. *See id.* at 8-9.  Lee sought as the sole remedy that she be permitted to purchase the requested items from an outside vendor. *See id.*  Notably, Lee does not request monetary compensation in her initial grievance or appeal filings, despite her claim for money damages in the instant lawsuit and DC-ADM 804 specifically mandating, "If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance."  COMMW. OF PA., DEP'T OF CORR., *Policy Statement* DC-ADM 804 § 1(A)(11)(d) (2015), https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-

11

documents are beyond the scope of the Rule 12(b)(6) inquiry.[58]  At the pleading stage, Lee's first medical indifference allegations suffice to state a claim for relief against Rossman and Houser.

Lee's second Eighth Amendment claim plausibly alleges deliberate indifference to serious medical needs by CHCA Boland, Dr. Dancha, and Dr. Kollman only.  Lee alleges that these Defendants denied her requests for hair-related treatment for gender dysphoria without a reasonable medical basis.  Although the Medical Defendants contend that Lee is alleging a mere disagreement as to care provided, the Court disagrees.  Lee alleges that Defendants denied medically necessary treatment based on an erroneous conclusion (lacking medical support) that her requested treatment was "cosmetic" only.  To the extent that the Medical Defendants argue that Lee's requested treatment was not "medically necessary,"[59] that issue is beyond the scope of a motion to dismiss.

Nevertheless, Lee's second medical indifference claim must be dismissed as to several Defendants.  The single allegation that Dr. LeCleric talked with CHCA Ardery on one occasion and then Lee received a formal, written denial of his

---

policies/804%20Inmate%20Grievances.pdf (last visited May 22, 2026).   It is unknown whether Lee sought monetary damages as part of grievance number 918898 or 944820 concerning her second medical indifference claim.

[58] In this regard, Lee has attached numerous documents to her brief in opposition to Defendants' motions to dismiss.  *See* Docs. 107-2 through 107-14.  These documents are also off-limits at the motion-to-dismiss stage, as they are not part of the amended complaint nor relied on therein.

[59] *See* Doc. 106 at 10.

request for hair-related treatments does not plausibly allege deliberate indifference by Ardery.  This is especially true where Ardery expressly relied on the medical opinion of Dr. Dancha.[60]  Ardery, who is not a medical professional, cannot be held liable for relying on the medical decision of a qualified medical expert.[61]

Additionally, Lee's second medical indifference claim fails against Facility Manager Houser.  The only allegation in this claim is that Houser upheld the initial grievance denial.  It is well settled, however, that mere participation in the post-incident grievance process is insufficient to allege personal involvement for a Section 1983 claim.[62]

In sum, Lee has plausibly alleged two different claims of deliberate indifference to serious medical needs.  The first claim, regarding denial of medically necessary cup bras and gender affirming makeup supplies, is plausibly alleged against PREA/PRC Staff Rossman and Facility Manager Houser, in their individual capacities.  The second claim, regarding the denial of hair-related

---

[60]  *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (noting that nonmedical prison officials are not "chargeable with the Eighth Amendment scienter requirement of deliberate indifference" unless they have a reason to believe (or actual knowledge) that prison doctors or other medical staff are mistreating or not treating a prisoner).

[61]  *See id.* ("If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.").

[62]  *See Dooley*, 957 F.3d at 374 (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

treatments, is plausibly alleged against CHCA Boland, Dr. Dancha, and Dr. Kollman, in their individual capacities. Defendants' motions to dismiss will be denied with respect to these foregoing medical indifference claims.

As a final note, the Court observes that it is unclear what particular harm Lee is claiming she suffered from the alleged deliberate indifference to serious medical needs. She vaguely alleges "pain and suffering" at the conclusion of her amended complaint.[63] Defendants, however, have not challenged this element in their motions to dismiss, so the Court declines to dismiss the Eighth Amendment claims on this basis at the Rule 12(b)(6) stage.

### B.    False Misconduct and Self-Harm Episode

In the second half of her amended complaint, Lee discusses "cause of action two." She alleges that she was issued a false misconduct on April 27, 2022, in which she was accused of possessing "K-2" and bringing that controlled substance into the prison through legal mail.[64] Lee alleges that she was not permitted to explain her position or otherwise defend herself that day and thus immediately began a "hunger strike," refusing all food and liquids.[65]

The next day, Lee alleges that she spoke directly with Facility Manager Houser and Deputy Superintendent Booher, informing them that she was initiating

---

[63]   *See* Doc. 12 at 13.
[64]   *Id.* at 9 ¶¶ 3-4.
[65]   *Id.* at 9 ¶ 6.

a hunger strike due to the purportedly false misconduct.[66]  According to Lee, Houser responded that if her mail was actual legal mail rather than contraband, the misconduct would be dismissed.[67]

Lee alleges that she continuously refused meals from lunch on April 27 through breakfast on May 2, 2022—17 meals over five days.[68]  She claims that on May 2, she was seen by medical for the first time, but the nurse did not take any blood or urine samples and provided only a 3-minute examination.[69]  Later that day, Lee alleges that she "found a razor blade on the floor of her RHU cell" and used it to cut her right arm "from wrist to elbow."[70]  She was immediately treated by a nurse and then sent for emergency care at an outside hospital, where she received 17 stitches to close the wound.[71]

As noted above, the Court previously construed Lee's amended complaint as asserting a claim of Eighth Amendment deliberate indifference to the risk of suicide and a Fourteenth Amendment procedural due process claim against some of the DOC Defendants.  Lee concedes that this second cause of action does not implicate the Medical Defendants.[72]  However, she fails to state a claim for relief in "cause of action two."  The Court will explain the numerous deficiencies with

---

[66]  *Id.* at 10 ¶ 8.
[67]  *Id.*
[68]  *Id.* at 10 ¶ 9; *id.* at 11 ¶ 13.
[69]  *Id.* at 10 ¶ 10.
[70]  *Id.* at 10 ¶ 11.
[71]  *Id.*
[72]  *See* Doc. 107 at 2.

any Section 1983 claim Lee may be attempting to raise in this portion of her amended complaint.

### 1.      No Section 1983 Claim for False Misconduct Alone

As the Court explained in its August 2023 Memorandum,[73] there is no constitutional tort claim for simply receiving a false misconduct, even if that false charge affects a protected liberty interest.  The filing of a false misconduct report, in itself, does not violate an inmate's due process rights.[74]  As the United States Court of Appeals for the Second Circuit aptly explained in *Freeman v. Rideout*, an "inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest *without due process of law*."[75]  Thus, to the extent that Lee is attempting to claim that her constitutional rights were violated by being falsely charged with and found guilty of possession of a controlled substance, that claim is a nonstarter.

---

[73]  *See* Doc. 51 at 23-24.

[74]  *See Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002) (citing *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986)); *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (nonprecedential).

[75]  *Freeman*, 808 F.2d at 951 (emphasis added).

## 2.   Fourteenth Amendment Procedural Due Process

It is possible that Lee is attempting to assert a procedural due process claim with respect to the purportedly false misconduct and her placement in the RHU during the investigation (and possibly as punishment).  If so, that claim fails, too.

To plausibly state a Section 1983 claim for infringement of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"[76]  If a plaintiff cannot identify a protected interest that is "at stake," the analysis is at an end.[77]

Lee cannot state a procedural due process claim because she has not identified a protected interest that is at stake.  Lee has alleged only brief administrative (and possibly disciplinary) detention in the RHU, which does not implicate a protected liberty interest.

The Supreme Court of the United States has held that disciplinary segregation alone—under conditions that mirror those "imposed upon inmates in administrative segregation and protective custody"—generally does not reflect an "atypical and significant hardship on the inmate in relation to the ordinary

---

[76]   *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

[77]   *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Hill*, 455 F.3d at 234-35.

incidents of prison life" such that it implicates a protected liberty interest under the Fourteenth Amendment.[78]  And the United States Court of Appeals for the Third Circuit has repeatedly held that disciplinary segregation for periods much longer than that which Lee experienced does not rise to the level of an atypical and significant hardship.[79]  Therefore, because Lee has not identified a protected liberty interest that is at stake for a procedural due process claim, the analysis is at an end and this claim must be dismissed.

Furthermore, assuming only for the sake of argument that Lee had identified a protected interest, she has not alleged that she was denied any of the due process protections mandated for prison disciplinary proceedings.[80]  Thus, for both reasons, she has failed to state a Fourteenth Amendment procedural due process claim.

### 3.  No Section 1983 Claim for Failure to Follow Policy

Several times in "cause of action two," Lee alleges that prison officials failed to adhere to certain DOC policy concerning hunger strikes.[81]  The problem

---

[78]  *Sandin v. Conner*, 515 U.S. 472, 484, 486 (1995).

[79]  *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months); *Torres v. Fauver*, 292 F.3d 141, 151 (3d Cir. 2002) (135 days); *Griffin v. Vaughn*, 112 F.3d 703, 705-07 (3d Cir. 1997) (fifteen months); *Dunbar v. Barone*, 487 F. App'x 721, 725 (540 days).

[80]  *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974) (requiring (1) the right to appear before an impartial decision-making body; (2) written notice of the charge(s) at least 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence (so long as the presentation of such evidence is not "unduly hazardous to institutional safety or correctional goals"); (4) if the inmate is illiterate or complex issues are involved, assistance from another inmate or a staff member; and (5) a written decision by the factfinder setting forth the evidence relied on and the reasons for the disciplinary action).

[81]  *See* Doc. 12 at 9 ¶ 7; *id.* at 10 ¶ 8; *id.* at 11 ¶ 13.

with such allegations, however, is that a violation of prison policy is not equivalent to a constitutional infringement. It is axiomatic that "a prison policy manual does not have the force of law" and that "a violation of internal policy does not automatically rise to the level of a Constitutional violation."[82] Lee's claim that certain Defendants failed to comply with DOC policy regarding hunger strikes, in itself, does not plausibly state a constitutional violation.

### 4. Eighth Amendment Indifference to Risk of Suicide

The gravamen of Lee's second "cause of action" appears to be a claim that several DOC Defendants (Ardery, Houser, and Booher) acted with deliberate indifference to her risk of self-harm or suicide. Notably, although she alleges that she was not properly monitored by medical staff during her five-day hunger strike, the only harm she asserts is her attempt to take her own life on May 2, 2022. Thus, her Eighth Amendment allegations sound in deliberate indifference to the risk of suicide or self-harm rather than deliberate indifference to serious medical needs. This framing is bolstered by Lee's "Jurisdiction/Claims" section of her amended

---

[82] *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted); *see Bracey v. Pa. Dep't of Corr.*, 571 F. App'x 75, 79 (3d Cir. 2014) (nonprecedential) (noting that "a violation of prison policy is insufficient by itself to support an argument for deliberate indifference" (citation and internal quotation marks omitted)); *Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable"); *Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017); *Williamson v. Garman*, No. 3:15-CV-1797, 2017 WL 2702539, at *6 (M.D. Pa. June 22, 2017); *see also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (noting that even violations of state law will not automatically have a "constitutional dimension").

complaint,[83] as well as her failure to object to the Court's prior construction of her Section 1983 claims.

To state an Eighth Amendment claim based on deliberate indifference to the risk of suicide or self-harm, a plaintiff must plausibly allege that (1) the individual had a particular vulnerability to suicide, meaning there was a "strong likelihood, rather than a mere possibility," that a suicide would be attempted; (2) the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.[84] The vulnerability to suicide "must be so obvious that a lay person would easily recognize the necessity for preventative action."[85]

Lee fails to plausibly allege that any Defendant knew or should have known she had a particular vulnerability to suicide or that any Defendant acted with reckless or deliberate indifference to that vulnerability. While she informed several Defendants that she was on a hunger strike, there are no plausible facts alleged that any DOC Defendant knew Lee had a particular vulnerability to suicide or acted with reckless or deliberate indifference to that vulnerability.

---

[83]  *See* Doc. 12 at 2 (describing "cause of action two" as implicating deliberate indifference and "failure to protect," as well as the denial of "due process").

[84]  *Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017); *see also Colburn v. Upper Darby Township*, 838 F.2d 663 (3d Cir. 1988) (*Colburn* I), *Colburn v. Upper Darby Township*, 946 F.2d 1017 (3d Cir. 1991) (*Colburn* II); *Woloszyn v. County of Lawrence*, 396 F.3d 314 (3d Cir. 2005).

[85]  *Palakovic*, 854 F.3d at 222.

In one paragraph of her amended complaint, she states in conclusory fashion that "the defendants were aware of [her] suicide history,"[86] but that is nothing more than a legal conclusion which may be disregarded.  Lee also maintains that certain prison policy regarding medical monitoring was not followed, but such allegations—in and of themselves—do not implicate reckless or deliberate indifference to a risk of suicide.  Simply put, Lee's pleading is wholly devoid of facts demonstrating that "a lay person would easily recognize the necessity for preventative action" in Lee's circumstances.

In sum, Lee's amended complaint fails to plausibly allege the second and third elements of a claim of deliberate indifference to the risk of suicide.  Dismissal of that claim under Rule 12(b)(6) is therefore required.[87]

### C.   Official Capacity Claims

Lee sues all Defendants in their individual and official capacities.[88] However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity.

---

[86]   Doc. 12 at 10 ¶ 8.

[87]   To the extent that Lee's amended complaint can be construed as raising an Eighth Amendment "failure-to-protect" claim, that claim would likewise require dismissal for similar reasons. That is, there are no allegations establishing that any DOC Defendant was aware of, or acted with deliberate indifference to, a serious risk to Lee's health or safety (*i.e.*, a potential for attempting suicide). *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).  Nor is there any plausible allegation that any DOC Defendant's deliberate indifference caused Lee's harm, *i.e.*, her suicide attempt. *See id.*

[88]   *See* Doc. 12 at 1.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[89]  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[90]  States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[91]  There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[92]

Lee seeks compensatory and punitive damages.  To the extent these monetary damages are sought against Defendants in their official capacities, such claims are barred by Eleventh Amendment sovereign immunity.  Lee also requests the following injunctive relief: (1) requiring Defendants to provide appropriate medical care for her gender dysphoria, (2) changing certain DOC policy definitions, (3) ordering the United States Department of Justice to investigate the

---

[89]  U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

[90]  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

[91]  *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

[92]  *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

claims in "cause of action two," and (4) requiring a change to DOC "802 prison policy."[93]  However, Lee is no longer in the custody of the Pennsylvania Department of Corrections, and thus any such claims for prospective injunctive relief as part of this lawsuit are moot.[94]  Additionally, any claims for prospective injunctive relief involving "cause of action two" must be dismissed because there is no underlying constitutional violation alleged.

### D.    Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[95]  Further leave to amend will be denied because Lee has failed to cure the deficiencies with her pleadings even after "amendments previously allowed."[96]  Moreover, this case has languished for nearly four years, during which time Lee has had ample opportunity to seek leave to amend.  Thus, this case will proceed on the remaining individual capacity Eighth Amendment medical indifference claims against Jennifer Rossman, Morris Houser, CHCA Boland, Dr. Dancha, and Dr. Kollman set forth in more detail herein.

---

[93]  *See* Doc. 12 at 12-13.

[94]  *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993).

[95]  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

[96]  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").

23

## IV.    CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part

Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6).  An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge